IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PATRICK MARSH,
JEFFREY KLEIN,
JUDITH KLEIN,
MICHAEL KURAS,
VEBI GJYLIQI and
THE ENTRUST GROUP INC.,
  *FBO Jeffrey Stephen Klein SEP IRA,*

      PLAINTIFFS,

vs.                                          CIVIL CASE NO.: 3:20-cv-00393
                                                     JURY DEMAND

PRONOVA SOLUTIONS, LLC,
TERRY DOUGLASS and
JOSEPH MATTEO,

      DEFENDANTS.

## COMPLAINT

Come the Plaintiffs, by and through their undersigned counsel, and file this Complaint against Defendant ProNova Solutions, LLC ("ProNova") and in support thereof, allege the following:

## THE PARTIES

1.     The Plaintiffs and Defendants are citizens and residents of different states of the United States of America as follows:

Patrick Marsh
5 Davenport Lane
Stamford, CT 06903

1

Jeffrey Klein
1425 Meadowood Lane
Charlotte, NC 28111

Judith Klein
1425 Meadowood Lane
Charlotte, NC 28111

THE ENTRUST GROUP INC.,
FBO Jeffrey Stephen Klein SEP IRA,
1425 Meadowood Lane
Charlotte, NC 28111

Vebi Gjyliqi
5 Gracie Lane
Darien, CT 06820

Michael Kuras
388 Middlesex
Darien, CT 06820

2. Defendant ProNova is a Tennessee Limited Liability Company duly organized and existing under the laws of the State of Tennessee, with its principal place of business located at 330 Pellissippi Place, Maryville, Tennessee 37804 and is properly registered to do business in the State of Tennessee.

3. Defendant Terry Douglass is a citizen and resident of the State of Tennessee and serves as the Chief Executive Officer of Defendant, ProNova, at all material times alleged herein and may be located at 330 Pellissippi Place, Maryville, Tennessee 37804.

4. Defendant Joseph Matteo is a citizen and resident of the State of Tennessee and serves as the President, R&D and Manufacturing Division of Defendant, ProNova, at all material times alleged herein and may be located at 330 Pellissippi Place, Maryville, Tennessee 37804.

## JURISDICTION AND VENUE

5. This Court has subject matter and jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum of or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

6. Venue is proper in this district under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

## FACTUAL BACKGROUND

7. Plaintiffs are a group of investors who participated in the sale of LLC units of ProNova in 2013.

8. The Plaintiffs were induced by ProNova and the other individual Defendants to invest in ProNova pursuant to a Private Placement Memorandum (hereinafter "2013 PPM") in 2013. (See attached Exhibit 1).

9. The Plaintiffs were induced to invest in the growth potential of and potential commercialization strategy for ProNova Proton Therapy Centers.

10. Plaintiffs justifiably relied in good faith on the ProNova 2013 PPM and invested capital funds based on the representations of ProNova and the 2013 PPM in the following amounts:

| Investor | Amount Invested | Number of LLC Units |
| --- | --- | --- |
| The Entrust Group Inc. FBO Jeffrey Stephen Klein SEP IRA | $105,000 | 5,250 |
| Jeffrey Klein | $145,000 | 7,250 |
| Judith Klein | $75,000 | 3,750 |
| Patrick Marsh | $300,000 | 15,000 |
| Michael Kuras | $50,000 | 2,500 |
| Vebi Gjyliqi | $100,000 | 5,000 |

11. The 2013 PPM emphasized to its investors ("Plaintiffs") that ProNova would operate as ProNova Proton Therapy Center stated as follows:

> *ProNova has developed a model for a two-room ProNova Proton Therapy Center that we project can be constructed for a total cost of approximately $55,000,000, including equipment. Since the vast majority of proton therapy centers built to date have cost upwards of $150,000,000, the substantially reduced development cost of a ProNova Proton Therapy Center will serve to significantly expand the market and increase the sales of ProNova systems. The two-room configuration provides the optimal balance between performance, costs and efficiency, incorporating a single cyclotron and two gantries. The diagrams below show the layout of the first and second floors of the model center, with a footprint of only 12,763 square feet. The layout maximizes operational efficiency and throughput.*
>
> ***Recognizing that the challenge of financing a project of this magnitude is a primary barrier to entry for many prospective customers, ProNova expects to initially partner with up to 6 suitable providers by investing equity and assisting the provider in obtaining debt financing to develop a Pro Nova Proton Therapy Center in which Pro Nova would be a 50% owner.*** *The financial model provides for an $11,000,000 (20%) equity investment shared equally by ProNova and the provider together with $44,000,000 of debt financing. Drawing from experience developing the Provision Center for Proton Therapy,* ***ProNova will provide support and assistance to plan, develop start-up and operate the centers through its total Solutions offerings***.
>
> *Providing an economical solution with ready financing will allow ProNova to close sales that may otherwise languish, expediting the deployment of ProNova systems.* ***Further, as the pro forma for the ProNova Therapy Centers reveals, investments in ProNova Proton Therapy Centers are projected to provide outstanding returns***.

12. The Plaintiffs relied on representations made by ProNova in the 2013 PPM that a significant portion of the capital funds invested by the Plaintiffs would be allocated towards the development of ProNova Proton Therapy Centers. The potential profitability and attractiveness to customers of the ProNova Proton Therapy Centers, as emphasized repeatedly in the 2013 PPM, were the critical component of the overall value proposition of the investment offering and the foundation the group of the investor Plaintiffs relied upon in good faith in making their decision to invest in ProNova's offering.

13. The plain language of the 2013 PPM demonstrates that the business model on which the ProNova LLC Units were offered to the Plaintiffs specifically and prominently featured both the sale by ProNova of equipment to Proton Therapy Centers and the equity ownership by ProNova of 50% of those Centers, with the promise of an outstanding return on investment.

14. ProNova represented to Plaintiffs in the Use of Proceeds disclosure in the 2013 PPM that $33,000,000 of the anticipated maximum offering proceeds of $76,300,000 (43.25%) would be applied to investment in six ProNova Proton Therapy Centers however, none of the offering proceeds were applied to that purpose.

15. The Plaintiffs were completely misled by ProNova as no Proton Therapy Centers have been sold or invested in by ProNova.

16. Instead of complying with ProNova's business model as presented to the Plaintiffs in the 2013 PPM, Defendants Douglass and Matteo, who serve as senior officers and directors of both ProNova and Provision Healthcare, and are shareholders in both companies, diverted the opportunity to profit from the operation, sale and investment in the proton therapy centers to Provision Healthcare. Provision Healthcare is a separate company from ProNova in which Plaintiffs have no interest. By diverting the commercial exploitation of the proton therapy centers to Provision Healthcare, Defendants Douglass and Matteo breached their fiduciary duties and duty of loyalty to the Plaintiffs, will financially benefit from Provision Healthcare's exploitation of the proton therapy centers through their ownership interests in Provision Healthcare, and have caused the Plaintiffs damages due to the diversion to Provision Healthcare of future revenue streams from the development, sale and investment in proton therapy centers.

5

Case 3:20-cv-00393-CEA-DCP   Document 1   Filed 09/01/20   Page 5 of 9   PageID #: 5

17. Plaintiffs first learned of ProNova's misappropriation of the right to commercialize the proton therapy centers in 2017 when Provision Healthcare opened a Proton Therapy Center as a non-profit organization in Nashville, Tennessee.

18. Plaintiffs have since learned that in 2018, Provision Healthcare opened a second facility which was a tax-exempt organization. ProNova did not make the Plaintiff investors aware of this second facility being opened.

19. In November 2019, the Plaintiffs received an email from ProNova to make an additional investment which stated as follows:

> *This ProNova investment opportunity is a means for investors to focus their investment on the medical device development and manufacturing company as ProNova seeks to implement recently developed intellectual property for its next generation proton therapy solution, the Treatment Room of the Future ... Provision Healthcare will continue to pursue the development of for-profit proton centers as financing permits and will support the development of not-for-profit centers by Provision Trust, Inc. The tax-exempt bond market has significant capital to invest and Provision Trust has been successful in financing its Knoxville, Nashville and Orlando proton centers with bond financing. Provision Trust plans to finance and begin development of one not-for profit proton center per quarter. Provision Healthcare plans to enter int on agreement with each of these new centers to provide development services, and we anticipate that each center will purchase a ProNova SC360 system and enter into a 10-year service agreement with ProNova.*

20. As evidenced by the foregoing, Defendants Douglass and Matteo, along with ProNova, morphed ProNova's business as it was described in the 2013 PPM from a company principally engaged in the development, sale and investment in proton therapy centers into a captive supply business with a single customer, Provision Healthcare, which would use ProNova to enable Provision Healthcare's exploitation of the proton therapy center commercialization opportunity. This has resulted in the Plaintiffs suffering the loss of a substantial part of the return on their financial investment in ProNova.

6

## CLAIMS AND CAUSE OF ACTION

### COUNT I

### BREACH OF CONTRACT

21. The Parties entered into a valid and enforceable contract pursuant to the offer and acceptance as described in the 2013 PPM upon which the Plaintiffs relied in good faith to invest their funds in ProNova.

22. Defendants breached the contract with the Plaintiffs by not investing the Plaintiffs' investment funds in ProNova Proton Therapy Centers in contrast to the representations in the 2013 PPM upon which the Plaintiffs relied in good faith.

23. Plaintiffs have suffered and continue to suffer damages as a direct and proximate result of, and caused by, the Defendants breach of the contract by failing to perform according to the contract terms.

### COUNT II

### FRAUD

24. Defendants, Douglass and Matteo, intentionally misled Plaintiffs with their 2013 PPM, and other communications, in order to deceive the Plaintiffs and induce them to invest approximately Seven Hundred Seventy-five Thousand Dollars ($775,000.00) of capital funds in ProNova knowing they did not intend to invest those funds in ProNova Proton Therapy Centers as opposed to making ProNova a captive supply company to Provision Healthcare.

25. Plaintiffs have suffered and continue to suffer damages as a direct and proximate result of, and caused by, the Defendant Douglass' and Matteo's fraudulent actions.

## COUNT III

## TENNESSEE CONSUMER PROTECTION ACT

26. Defendants actions related to the allegations in this Complaint constitute unfair and/or deceptive acts or practice which violates the Tennessee Consumer Protection Act ("TCPA") set forth at Tenn. Code Ann. §47-18-101, et seq. as described previously herein.

27. Defendants misrepresentations, deception and inducement to the Plaintiffs encouraged Plaintiffs to invest capital funds in ProNova as represented in the 2013 PPM and other communications violate TCPA §47-18-104(b) and Plaintiffs are entitled to treble damages and/or attorneys' fees as a direct, proximate and legal cause.

## COUNT IV

## NEGLIGENCE

28. Defendants owed a fiduciary duty to Plaintiffs to use ordinary or reasonable care with regard to Plaintiffs' capital investment funds the Defendants solicited from them for ProNova.

29. Defendants breached their duty to use ordinary and reasonable care by failing to invest the Plaintiffs' capital investment funds in ProNova Proton Therapy Centers as opposed to morphing ProNova into a captive supply company to Provision Healthcare.

30. Defendants breach of their fiduciary duty to use ordinary or reasonable care are the cause in fact and legal cause of the Plaintiffs' damages.

## DEMAND FOR RELIEF

**WHEREFORE,** the Plaintiffs demand the following relief from the Court against the Defendants:

1. Plaintiffs demand their capital investment funds, as previously described herein, to be returned to Plaintiffs in the full amount of Seven Hundred Seventy-five Thousand Dollars ($775,000.00), plus interest;

2. Plaintiffs demand an additional fair market value return on their capital investment funds to ProNova;

3. Plaintiffs demand relief pursuant to all alleged causes of action including, but not limited to, attorneys' fees and/or treble damages pursuant to the Tennessee Consumer Protection Act set forth at TCPA §47-18-101, et seq.

4. Interest on all damages and awards; and

5. The Plaintiffs demand a trial by jury as to issues joined and any other relief the Court deems appropriate.

Respectfully submitted,

            BAKER, O'KANE,
            ATKINS & THOMPSON, PLLP


            /s/ *MICHAEL K. ATKINS*
            Michael K. Atkins (BPR # 017862)
            2607 Kingston Pike, Suite 200
            Knoxville, TN 37919
            Phone: (865) 637-5600
            Fax: (865) 637-5608
            Cell: (865) 805-5075
            matkins@boatlf.com

            *Attorney for Plaintiffs*